The last case this morning is case number 4-17-0232. Shauna Gilliam v. Board of Trustees of the City of Pontiac Police Pension Fund and City of Pontiac. Appearing for the appellant Board of Trustees of the City of Pontiac Police Pension Fund is Attorney Richard Reimer. Is that correct? Yes sir. All right, thank you. And for the appellee City of Pontiac is Attorney James Powers. Is that right? Yes. And then for the appellant, or excuse me, for the appellee, Counsel, how do you pronounce your last name? Mielke. Thank you sir. Attorney Craig Mielke. For the appellant, it's my understanding that there is an agreement that you'll split your time evenly, 10 minutes apiece? Yes. Okay, and then the rebuttal, is there an agreement in regards to rebuttal? Aye. Okay, thank you. You may proceed. Thank you. May it please the Court, Mr. Mielke, Mr. Powers, as you know, Richard Reimer on behalf of the Pontiac Police Pension Fund. The case you have to cite today is really one, you think of first impression in front of this Court. You have to decide whether or not a police officer performing bicycle training duties is entitled to a line of duty disability under the provisions of the Illinois Pension Code. On behalf of the Police Pension Fund, we respectfully submit that it does not. It does not qualify as an act of duty. Now, we are not claiming here that a training exercise can never constitute an act of duty. Certainly, there could be a number of scenarios we could come up with. Unfortunately, that's not what we have here. We don't have a situation where the appellant, the police officer has met her elements. As you recall, the facts of this case briefly are bicycle training exercise sustained an injury to her hand. There's no dispute that the officer is disabled. No question there. The training was voluntary. The training was not required by any state law. It was not required by the rules and regulations of the Pontiac Police Department. There was no ordinance, nothing. That's all there was. It was not a requirement to be a police officer. It was not a requirement to be necessarily a bicycle officer. A plaintiff police officer is not required to be a bicycle officer as a condition of employment. The board found that the tactical maneuver that she was performing when she was injured was identical to those taught to civilian classes, people that ride bicycles. It was not unique to police duties. So the pension board here found, after hearing all the evidence, that the plaintiff failed to meet her burden. And there was really three findings by the board that are important here. The plaintiff failed to show that the bicycle training as it was testified to was not mandatory. In other words, it was not required by state statute. It was not required by the ordinance or regulations of the Pontiac Police Department. That's the first element in Section 5-113 of the Illinois Pension Code. Secondly, the training was not required by the rules and regulations or the ordinances of the Pontiac Police Department. And finally, the third element that was not present was it was not an act in which the police officer was acting for the direct purpose of saving the life or property of another person. That's the statute. That's what the statute and the cases interpreting the statute require. You have to have this special risk, unique duty, and you have to have this duty being performed by state law or the rules and regulations or ordinances of the police department. Or it's an act performed by the police officer that becomes disabled having for the direct purpose of saving the life or property of another person. We didn't have that. I think that second is off the table. What the board found is that there was other civilian occupations, there were other civilian activities, riding bikes, so there was no uniqueness, no special risk. If this is a matter of training to be a bicycle officer, it doesn't count? I'm sorry, your Honor. It doesn't count if this is an act engaged in by the plaintiff who is training to be a bicycle officer? No, sir, I don't believe it does. Why not? Well, first of all, I can think of a lot of examples perhaps to answer your question that would constitute special risk. Firearms training, SWAT, high risk felony tactics, something of that nature that could be ordered by the police chief to be training, that would probably be special risk. In other words, ordinary citizens don't have to do that. So it's not just I'm ordered to do it, I'm required to do it. There's really two prongs that have to be satisfied to any police officer under the case law and the statute that are eligible for the benefit. You have to have this special risk, and then it has to be required either by state statute, required by ordinance, or police regulation. You need both, or you need that final one, which I don't think is present here. So the best example I could give you, the legislature across the street has come up with all sorts of mandatory training. It's actually by statute. So it might meet the first requirement. There's diversity training. There's actually scenario-based shooting scenarios. So those are mandated by statute now. And the shooting one may, in fact, meet that special risk because ordinary citizens don't do it. But training classes, legal updates, things that might be mandated by statute aren't necessarily, they don't meet the criteria of having that special risk. Going back to what Justice Steigman asked, Justice Steigman asked whether or not you disagree that a training incident could be considered an act of duty. And I think you indicated that under certain circumstances it could be, such as weapons training or SWAT training, something along those lines. Is that accurate? That is fair. That's correct. That then leads me to question how you distinguished ALM, A-L-M, and Jones v. Board of Trustees, because it seems in your brief you sought to distinguish those two cases based on the fact that the officers were, the court found the officers were on patrol. And so that wasn't necessarily, according to your acknowledgement here, that a training exercise could be compensable as an act or a line of duty pension. It would seem that the ALM case and the Jones case would support the plaintiff's position here. I would respectfully disagree with that for the following reasons. First of all, ALM, yes, ALM was an officer riding a bicycle. Officer ALM was on patrol. It was actually all the cases that are talked about in this Court's decision in Jones. Jones was also on patrol. So factually distinguishable. This officer was not on patrol. Why wouldn't the same argument apply in those cases that you used here? Well, everyone just rides a bicycle, so what's the big deal? Well, I guess the problem is if the argument is accepted here, this Court agrees that training under these circumstances is a line of duty, that really blurs the line now and I think renders the legislature's use of a line of duty and a non-duty disability pension really meaningless. Because there is a line of cases, very thorough, throughout the State, that being on duty and in uniform alone is not enough. There has to be something more. That's not enough. You have probably the closest case that you'll find, and we think it's the most persuasive, is a case that Mr. Mulkey and I were involved in, which is a training case, which was the Svoboda case out of the 2nd District. That was one where actually Mr. Mulkey, I think, made the same argument that the officer was required to do a bench press. He became injured while performing the, we'll call it mandatory bench press, and the Court said that does not involve special risks. The 2nd District Appellate Court specifically rejected that argument, saying that ordinary citizens perform weightlifting activities and have a risk of incurring weightlifting activities. Well, you mentioned firearm training. I've been at places where you can go shoot, and a lot of people do this, and why wouldn't the same argument apply there? Ironically, I was asked that by the trial court, the same question, and I agree. There could be ordinary citizens that do firearms training, but I think the difference is, is there a special risk and is the other element met? In other words, two things have to be present that weren't present here. We don't believe there was special risk. We do not believe that. What about the very maneuver that caused the injury in this case? What was it called? She was called to lift the bicycle as she was going up onto a curb. I don't recall the maneuver, but I think the cases tell us that it's not the, it's the capacity in which the officer is engaged in at the time of the injury, not the precise mechanism of the injury. So I don't think that, I think that is not something that should be concerned. But this is, well, on the argument that, hey, people just ride bikes, it's not anything special to law enforcement. But it seemed to me that that procedure, I forget the name now, was something which would be pretty, if not exclusive, pretty much limited to a technique used by law enforcement officers climbing a curb on a bicycle. I believe the evidence before the board by the person conducting the test was that that curb jump was the same type of curb jump that was taught in other civilian-type schools, that that person had taught. Well, now, you know, I'm thinking about the instruction given to juries, about the common experiences in life and all that. I'm no kid anymore, and I've been around a long time, and the idea of curb jump in bicycles is something which strikes me as hardly the norm for bicycle riders ever. Is that your claim, that this is, hey, this is what goes on all the time, and we just missed it? My claim is simply that ordinary citizens ride bikes, participate in mountain bike training. The plaintiff here conceded that she'd done this for years, not in training. Well, did she concede that she did parallel curb ascents? I don't recall that that's what she said. I believe the testimony by the instructor that was performing the instruction had said it's basically the same maneuver that we teach people that are not police officers in similar tests. I believe I've overstepped my welcome. Thank you. Okay. Thank you, Mr. Reamer. Mr. Powers. Following up on some of the court's questions, the way you distinguish this case from the Alm and the Jones case is based on this unique factual record that was generated in this case. If you look at the factual record, the testimony from the trainer in this case, he testified that this is not unique to police officers, this particular technique that he was teaching. He testified that it was purely defensive or safety-related in nature. It was intended to avoid getting out of hazards in the roadway or avoiding vehicles. It was not in any way intended primarily to involve or allow the person to engage in felony pursuit, as there was some suggestion. We would encourage the court, if you haven't done so already, there is a video, a 37-second video snippet of the actual training exercise, not with the applicant, but a mock that the trainer actually showed to his trainees. Thirty-seven seconds that will show the innocuous, benign nature of this particular maneuver. What you will see, if you have watched it or you will watch it, is that it involves someone on a bicycle slowing down next to a curb parallel, sticking their foot out onto the curb or onto the sidewalk, lifting, not jumping, lifting the front wheel onto the sidewalk, and then pushing with the pedal to get the rest of the bike onto the sidewalk. We would submit that you could take judicial notice if you watched this video, and as the pension board concluded, this is not an inherently dangerous maneuver. And based on the fact record that you are limited to and that the pension board was limited to, we would submit that it was not clearly erroneous, and it certainly was not a violation of the manifest weight of the evidence standard. For the pension board to conclude that this is not police-centric, this was not police-unique in a sense, if that's even a word, there are civilian counterparts, there are civilian equivalents to this type of maneuver, and the person testified in off-road biking and in his training classes, this was taught all the time. So that would be how I would distinguish the ALM. Why is this a manifest weight of the evidence issue? What evidence was in dispute? Well, to the extent, if you noticed, in the respondent's or the appellee's briefs, they had raised certain facts that were never ever found or actually included as a statement of fact in the pension board's decision. For example, I believe they had cited some record evidence about this technique being inherently difficult. That was never an actual factual finding. So to the extent that the appellee is trying to introduce facts that the pension board never recognized, that would be, I think, where the manifest weight of the evidence standard would come in. But I would agree. So if he said nothing about that in his reply brief, then this would be de novo review? No, it would be clearly erroneous based on the Jones case that this court had issued and based on the trial court's finding as well. But what facts are in dispute? The different facts that were not focused on and were not actually found by the pension board. So, for example, there is this question of whether or not she was engaging in felony pursuit. The record evidence, we believe, is very clear that at that discreet moment in time when she was engaging in this maneuver, she was not engaging in felony pursuit. Both she admitted as well as the trainer admitted that this was not a felony pursuit scenario. This was simply a group of individuals getting around in a circle, practicing, driving up to the curb, lifting their front wheel, and getting onto the sidewalk. So that's one example of a fact that seems to be somewhat ambiguous. They point to a factual finding that it was felony pursuit. The record evidence clearly shows that it wasn't. Well, if you were in a felony pursuit on a bicycle, this is how you would climb a curb. That's not the evidence showing, though, what the purpose of this. That's how it would be done, wouldn't it? I mean, I don't understand. I don't know. There's nothing in the record that talks about that.  I don't understand how calling it a felony pursuit or not would change what she would have done. Well, I think that goes to the crux of the Supreme Court's test, where it says that you have to look at the crux and the capacity in which you were acting at that discreet moment that you were. I'm not being clear. When I ask what are the facts in dispute, you mentioned this felony pursuit aspect. It seems to me that that is not a fact in dispute because it doesn't matter how you characterize it. So what I'm looking for is what are the facts in dispute on this record before us? Well, I think, with all due respect, I believe that will make a difference whether or not it's characterized as felony pursuit, whatever that means. I'm not quite sure because the record is not clear. Well, as I keep on saying, she'd be doing the same thing if this were a felony pursuit. I don't know that. There's nothing in the record that says she would be doing the same thing. Well, do we have anything to suggest otherwise? I mean, this is how an officer is advised to climb the curb, right? To climb the curb for defensive emergency, to avoid emergency obstacles in the roadway. But there's a different way to climb the curb if it's not? Possibly. Is there any evidence in the record? There's no evidence. There's no evidence. Well, then let's assume this is the way it's done, whatever your purpose is. My purpose, my question. What are the factual disputes that before us in this record? There are some other factual disputes. Again, there are facts being raised by the appellee in their brief regarding the difficulty of the technique. There is clear evidence in the record saying that this was not difficult. They have cited to a statement, taking it out of context, suggesting that this wasn't difficult. There was some test, there was some reference to a injury report that was not cited or not cited by the pension board in its decision. And there was some statements taken out of that hearsay document in the appellee's brief, claiming that the, that this was overall the purpose of this safety technique was for, for this parallel curb ascent was for the safety of the police officer. That wasn't actually cited by the pension board in its decision. So there are additional facts being referenced by the appellee in their brief. If we review the pension board's decision, and accept all the representations that's set forth therein, then why isn't it the NOVA review? Because you're applying the facts to, you're applying the facts to, or the law to the facts or the facts to the law, or it's a mixed question. Well, if there's no mixed question of fact, we're accepting all the facts that's set forth by the board, then what's, what's the issue? Why is it mixed? What, what is mixed about it? I, the mixture I believe is the law to the facts and the facts to the law. I don't necessarily think clearly erroneous depends on an actual dispute in fact. I believe there's a lot of cases in the labor board context where the fact, the, the factual record is undisputed and yet the courts still have applied a clearly erroneous standard of review. Well, I suppose that might be the case if there were inferences to be drawn, but I'm, I'm trying to figure out, well, there's a body of case law that the Supreme court has discussed in other contexts, directing this court in itself on standards of review that if there's no dispute of fact, then it's a de novo review. Then it's a question of, as a matter of law, what are these facts mean? I, I would submit that at the very least there is a dispute between the parties between the factual record as found by the pension board and additional facts that the pension board did not explicitly find additional facts that the appellee is trying to point to in its, in the record. And I believe there you have this mixed ambiguity that is starting to form about what the factual record says. And I see my time is almost up, but that is what I would say to go back and look at the appellee's brief, look at the facts as set forth in the pension board hearing. And I think you will see that there are certain facts that the plaintiff feels it's forced. It's her case. Well, let's assume for the moment that the plaintiff had just argued the facts as set forth by the board and saying this, the board was made a mistake. What would be the standard review then? I believe it would be clearly erroneous. And I, I draw on what they argue makes no difference on the standard review issue. I don't believe so. I believe clearly erroneous should apply. And regardless of whether or not there is a disputed issue of fact in the record, I believe the case law, and I could be wrong, I will readily admit it, but I believe the case law suggests that when you're applying a statute to a body of facts and you're trying to figure out whether they have properly applied those facts and interpret the law as applied to the facts, whether the facts are disputed or not, I believe clearly erroneous applies. But I would concede that I might be wrong. The Supreme Court, in the context of motions to suppress, has told us that we're supposed to accept all the historical facts as found by the court. And then the question of what do they mean is reviewed de novo. For instance, whether a motion to suppress is properly granted. That doesn't apply here? I don't believe it does. Why shouldn't it? Well, I would need to think about that, Your Honor. You've caught me off guard. All I can say, just to summarize, though, is I believe that even if you applied a de novo standard, because again, we believe the facts as found by the pension board, and I believe what you should be limited to in terms of the factual record, we believe that those undisputed facts, even if you do apply a de novo standard to just those facts, we believe that the decision was not wrong, and that there was not enough evidence that the appellee had presented to carry her burden of proof at the hearing. Thank you. Thank you, Counsel. Mr. Mielke. Good morning, Counsel. First, I'm very happy to be here and survive the ice storms in Chicago. There's two issues raised in the briefs. One is the first prior special risk. The second prong, was this a regulation or special assignment? I want to point out that the second prong was not even discussed by the board. They didn't find, against Officer Gilliam on the second prong, this is really a special risk analysis. Let's take a look at what the board found, and I am happy to accept the 82 numbered paragraphs of factual findings by the board, and say based on that, that it is a de novo standard of review to determine the active duty question. What did you say in your brief about that? Well, I said what I just said, that if there is case law, that if the facts are undisputed, and the sole question is active duty, that is de novo. Now, the trial court used, not manifest, wait, what's the one in the middle? Clear and convincing? Yeah. Well, I believe the trial court applied a clearly erroneous standard. Clearly erroneous, yes. And if you apply that, I think you still come to the same result. The trial court did look at the record, did a very good job of examining the record, and cited some additional facts that weren't cited by the board, and maybe to that extent, it is proper to use the clearly erroneous standard. But let's take a look at the undisputed findings of the board. One of the first ones, this is paragraph 8, applicant had ridden bicycles all her life. And I'm going to jump forward now to page 11 of the board's decision. And they say, in fact, applicant testifies she'd been riding bicycles for most of her life. And then the board says, this fact alone precludes applicant from meeting her burden of demonstrating she's entitled to a line of duty disability pension. So I guess I should have gone home as soon as my client said, I've been riding bicycles all my life. But of course, that's not what our Supreme Court has said in the Johnson case, where Officer Johnson is merely walking across the street. We assume he's been walking across streets his entire life, and yet he was entitled to a line of duty disability pension, because on the totality of the circumstances there, he was on patrol, he was assisting a citizen. The court found that to be an act of duty. Mr. Melke, I'm sorry to interrupt you. Bookmark where you're at. You can go back to it, because you're applying the facts, in this case the factual findings of the board, to the overall framework, the analytical framework. I want to go back to the analytical framework. I want to understand how the officer's capacity at the time of the injury is to be considered by the court here. I think there are cases involving training injuries, there are cases involving the officer while on patrol. If, should there be, would there be a different analysis here, or a different result, if your client was on patrol at the time this exact same maneuver was employed, as opposed to this simply occurring during training? If she was on patrol, I don't think we would be here today. I think the law would be that way. It would be much clearer in that regard. Absolutely. And I think that's where the analytical analysis comes in. I think if you look at the case law, there's a spectrum out there. So if someone is doing something very ordinary, such as Officer Johnson walking across the street, but he's on patrol and responding to a citizen serving and protecting, we're going to call that in the line of duty. And maybe on the other end of the spectrum, is the case I lost to Mr. Reamer in the 2nd District, which is Tom Swoboda, where he's out of uniform, I think they were actually at a gym somewhere, and he's doing a bench press. It has nothing to do with serving and protecting anyone at the moment. That's something that the court found other citizens do. So we're going to say that's not in the line of duty. All right. And I understand that case. But ask Mr. Reamer about potential active duty benefits or line of duty pension benefits being awarded for training exercises, and there could be, he acknowledged, in certain circumstances, if capacity is the linchpin of the analysis, how would that come into play with a training exercise? Absolutely. If the board was correct that the fact that my client knows how to ride a bike alone is the end of my case, then you would think the city of Pontiac would say to Officer Gilliam, you want to be a bike patrol officer? Have you ridden a bike all your life? Yes, I have. Here's the bike. Go out on patrol. But they don't do that. And the record is clear. In order to be on bike patrol, you have to do a four-day course, and that course consists of a course of study that is developed not by bike experts but by police experts. The purpose of that course is to teach officers to be able to ride bicycles on patrol for their own safety and to be able to ride bicycles on patrol effectively. And the maneuver in question is clearly not just a defensive maneuver. The evidence on that is very clear by Sergeant Summers. He says the purpose of the maneuver is both, I think he called it, defensive and offensive. He says, this is my question, I mean the bike patrol isn't going to chase a car, they're going to typically chase another guy on a bike or on foot. Answer, we can take both actions. And that was in reference to what would you use this particular procedure for. So it's both offensive and defensive. As to the issue of is this particular technique unique to police or is it something average citizens do? Again, this is a specific finding by the board. This is finding number 74. Regarding whether the parallel curb ascent maneuver was unique to police bicycle patrol, Officer Summers testified, I wouldn't necessarily say it's unique. I'm not a civilian instructor. I don't teach like civilians on road bike skills, and I'm not associated with any of those techniques, if you will. I only teach the police part of it. So there's clearly a police component, unique to police, of this parallel curb ascent. I asked Sergeant Summers, when I was a kid riding a bike and I would try to go up a curb, I would go ridiculous to it at 90 degrees. And he explained, well, that's not the hazards that police officers face, where they have to either get out of the way quickly or hop over a curb in order to chase someone. So the facts as found by the board in that 82-numbered paragraph clearly indicate on the spectrum of, okay, we're not on patrol, we're in training, but is this kind of training like Tom Swoboda doing a bench press or is it more like SWAT training? The board found paragraph 13 that she's in full uniform, wearing a vest, pepper spray, handcuffs, service weapon. The board found that the training was a certification process to be certified to do police bike patrol duties. The board found at the time of the injury, the applicant was learning felony pursuit and the procedure of parallel curb ascending. And I'm not real clear how the city or the board gets the challenge, but certainly I don't think Mr. Reamer can challenge his own board's finding. And Mr. Powers, the city did not file a cross appeal, they didn't file a counterclaim in the administrative review action, and I don't think they can ask the court now to change a finding that they never challenged. I don't understand your last point. They won. What's their cross appeal? What are you referring to? Well, apparently they don't like certain factual findings. Factual findings aren't appealable, are they, counsel? It's judgments that you're appeal. Yes, absolutely correct. Go ahead. Then how the officer fell, and again, the city raises some issues on this, but the findings of the board was, and this is paragraph 19, applicant testified when she fell, my arm was actually on the, was between the butt of my duty weapon and the concrete, and my arm was underneath the rest of my body. Let me ask you the same question I asked on the council, particularly Mr. Powers, and that is what are the facts of dispute here? He says you cited a bunch of stuff apparently in your brief that are disputing the findings. Are you disputing findings here? No, absolutely not. I do not dispute any of the 82 factual findings of fact made by the board. I absolutely accept those. And if you just look at those 82, the board's decision can't be sustained. If you evaluate the record, and there's various other facts they just didn't bother to cite that aren't in dispute, but there are additional facts that would also support overturning the board's decision. Well, does that, do those additional facts that you talk about change our standard of review, or what is our standard of review here? I believe it's de novo. I mean, there's case law that says where the facts are not in dispute, and it's not the facts found by the board, it's just the factual record. That goes back to my other question. If you're saying that there are facts in this record which weren't, let's say, cited by the board in its findings, how are we supposed to deal with them? I'm sorry? How are we, as a court, supposed to deal with these other factual matters, testimony, let's say, that the board didn't address? Well, I think there's two ways. Obviously, the parties have briefed the facts, and they've set out their positions on those facts, and maybe on some of those there are some disputes, and maybe the best thing to do is to put those aside and go with the 82-numbered paragraph where the parties seem to admit there is no dispute. What are you asking us to do? I am asking you to look at the 82 findings by the board, apply the de novo standard, and overturn the board's decision. So to the extent that there are evidence in the record other than matters cited specifically by the board, what should this court do with that? I think to the extent that the court doesn't believe the 82 findings are sufficient, I think the court can and certainly should look at the record and see if there are other facts which are genuinely not in dispute, and if the court finds they're relevant or material, I think the court can certainly look at those and consider them. Does that then change the nature of our review? I don't believe so. The fact is undisputed whether the board cites it or not. I mean, Mr. Reamer's office does a great job, because we've had many cases together, on doing the board's decisions, and we often see 50, 60, 100-numbered paragraphs. Other board attorneys don't do that, and it's a much more summary fashion, and we don't really have a bunch of factual findings by the board. I don't think that changes the review purview of this court, based on how thorough the pension board was and how many paragraphs that they had in their decision. So it's your position that we can limit ourselves to what the board found and you win? Yes. But that's not what the trial did, the court did. I agree with that. The trial court cited a few additional facts, which I don't believe are in dispute. Now, we're reviewing the decision of the board, not the trial court, so how should we deal with what the trial court said? Right. I've often said that to trial courts on administrative review, happy to be here, but you're kind of giving an advisory opinion that, at the end of the day, isn't really going to be important to the appellate court. Well, that's good advice, but what is your advice for us? And dealing with what the trial court said? Ignored? I think the safest thing is to take the 82 findings of fact by the board, look at those, and make a decision as a matter of law and a de novo standard. So anything beyond those 82 findings, as far as finding effects are concerned, we should disregard? I think you can disregard them. All right. That's why I asked, should we? Is that what you think our rule should be? I think that's always the safest thing to do for an appellate court, and it's the safest thing for me to do as an advocate to suggest that. So if we disregard anything besides the 82 fact findings, then it's de novo? If you're going to address the so-called second prong, the board didn't touch the second prong. There are no factual findings on that second prong. So I don't know how you address that. If you feel it has to be addressed, I don't think it does without going beyond the factual findings by the board. And then my simple answer to that is the evidence is clear, and the police chief testified that while it's voluntary to become a bike patrol officer, if you want to do that, it's mandatory and you have to go through this four-day training. And if you don't do what your instructor says, you're going to be disciplined. So in my mind, that creates a special assignment situation that the officer has to do those four days. But again, that's undisputed, and I think it's a question of law for the court to decide. Counselor, are there any reported decisions in Illinois that involve training injuries in the context of a claim for line-of-duty pension benefits such that the board had to determine whether or not the training exercise constituted an act of duty? The only one that I'm aware of is WABOTA, and that really wasn't a training exercise. That's an annual exam. Right. To my knowledge, there aren't, and nobody cited one, certainly, that there are no decisions as to when a training exercise or when something that's not on patrol is going to be in the line of duty. I mean, the Supreme Court says certainly line of duty is not limited to being on patrol. Is the Pension Act for making this determination of line of duty for police officers similar to the act as it applies to firefighters? I think there's a couple of twists and turns in there. I don't represent firefighters, but they're not directly analogous. I think Rick might be better able to address that. So then very quickly, rounding back to Johnson, and this is from the reply brief for the City of Pontiac Police Pension Fund. It quotes the Johnson decision, quote, The crux is the capacity in which the police officer is acting. When a policeman is called upon to respond to a citizen, he must have his attention and energies directed towards being prepared to deal with any eventuality. Close quote. And then the pension fund goes on to argue, in this case, it was a training exercise, not a policeman on patrol. Right. And if we follow that to its logical conclusion, then it would be that there could be no line of duty pension benefits ever for an officer engaged in a training accident. Because they wouldn't be in their capacity, they would be in training as opposed to being on patrol. But Johnson says, and it's cited in my brief, and I don't have the site in front of me, but Johnson says we are not limiting line of duty pensions to serving and protecting the public. So clearly Johnson keeps that open, which is then I think where we get into that spectrum of if you're injured during SWAT training, it looks like the people can see that's potentially in the line of duty. If you're injured doing the power lift for your annual exam, you've got appellate case law that says that's not. So where does Shawna Gilliam come in that spectrum? Well, if we're to follow Johnson, if the crux of the analysis is examining the capacity of the claimant, here, what was your client's capacity? The capacity is unique training for police officers to do patrol work taught by police specialists, not bike specialists, and that the specific maneuver she was doing, this parallel curb ascent, specifically relates to police duties of being safe for the officer to avoid a car coming up behind them, and also being able to chase a pedestrian effectively and safely for the police officer. So you can think of other training matters, paperwork issues, I don't know. There's certainly a lot of training police officers do involving how to fill out their paperwork properly. That may not take into account the special risks of a police officer. Here, though, we've got training, like SWAT training, that directly relates to police work. And, you know, she's in uniform on the streets, does that mean she's automatically in the line of duty? No, but I think those are factors. I think if you look at all of the factors, the totality of the circumstances, it gets us to that area of training exercises that should be found to be in active duty. I see my time is up. You have until the red light. Any other questions? I have nothing. I don't see any. Thank you, thank you very much. All right, and Mr. Raymer, you have rebuttal argument, is that right? Yes. All right, go ahead. First of all, let me address your question. The fire pension code is dramatically different. There's no special risk requirement. I don't think you can compare apples and apples here. Firefighters are different. But the analysis of active duty is, would there be an analogous argument to be made as between firemen and police officers? There's similarities. I mean, no disrespect to first responders, they should get everything they have coming. I was a police officer myself, I don't want to give you the impression that I'm somehow anti-police. Firefighters have a lower bar. They have the requirement that they become disabled while resulting in an act designed to perform the life or property of another person. They have the same requirement that has to be by statute, state statute or ordinance of the municipality or rule and regulation of the department. They don't have this whole unique special risk requirement. So, as many people have told me, I should have stood in the wrong, the other line, standing in the firefighter line. So, I don't think you can compare them. I can tell you our Supreme Court has decided cases involving placebo benefits. I think you may have had a couple of Public Safety Employee Benefits Act, and they were training cases. They weren't active duty. This is the most litigated area under Article 3 of the pension code, what is and what isn't an active duty. But is there a reported decision involving a training accident in regards to whether or not it constitutes an active duty? Only in the fire service. There is a, yes, there is. Now that I think of it, there's a First District appellate case involving a firefighter climbing a ladder, simulating that, who got a line of duty disability. And I'm sorry, I wasn't clear. In terms of the police officer's claim. The only case that I'm aware of is the one that Mr. Mulkey and I have cited in our brief. That's the Swoboda case, the Second District. Again, I think the best analysis is the Summers case. It's a First District case, and that's an officer who's on duty, he's in uniform. In fact, he made the same argument that Mr. Mulkey makes here. He says, I'm delivering supplies. I could be disciplined if I don't deliver the supplies or if I don't do what I'm supposed to do. He became disabled while delivering supplies in full duty, in uniform, following the orders of his boss. And the court said, no, that is not unique. That is not special risk. And just because an officer is on duty, performing orders, duties assigned by the orders of his supervisor, would render meaningless the difference between Article, the line of duty, and the non-duty disability pension. And that, to me, is the fear. I think there's a slippery slope here. As I said on the outset, I am certainly not saying that a police officer can never, ever get a line of duty disability for training. I think I gave you some examples. I haven't seen a case yet. I hope you don't have it, because it's very hard to establish a bright-line test. I think, though, that you don't have it here, because according to all the cases that have interpreted this section, you have to have those three elements. And she did not meet any of the three elements. I would be happy to answer any other questions you have. I don't want to wear out my welcome. All right. I don't see any questions. Thank you. Thanks to all of you. Thank you. The case will be taken under advisement, and a written decision shall issue.